UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| A.H.,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 19-cv-03038-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 19 & 20 |

## INTRODUCTION

The plaintiff A.H. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for a period of disability insurance benefits under Title II of the Social Security Act ("SSA").[1] The plaintiff moved for summary judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. The

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF 19.

[3] Cross-Mot. – ECF No. 20.

ORDER – No. 19-cv-03038-LB

court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for further proceedings.

**STATEMENT**

**1. Procedural History**

On October 6, 2016, the plaintiff applied for Social Security Disability Insurance ("SSDI") benefits under Title II of the SSA.[4] He alleged disability beginning on August 24, 2015, from rheumatoid arthritis.[5] The record also shows diagnoses for carpal tunnel and fibromyalgia.[6] His claim was denied both initially and on reconsideration.[7]

The plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and one was held on January 20, 2018, and the plaintiff and a vocational expert ("VE") testified.[8] On June 29, 2018, the ALJ issued a partially favorable ruling finding the plaintiff disabled as of September 12, 2017.[9] The plaintiff requested review from the Appeals Council, and it denied the request on March 27, 2019.[10]

The plaintiff timely filed this action for judicial review and moved for summary judgment.[11] The Commissioner filed a cross-motion for summary judgment.[12] All parties consented to magistrate-judge jurisdiction.[13]

---

[4] AR 144. Administrative Record ("AR") citations refer to the page numbers in the bottom-right hand corner of the AR.

[5] AR 54.

[6] *See, e.g.*, AR 285–87, 663. The ALJ considered fibromyalgia and carpal tunnel in his decision. *See* AR 18.

[7] AR 73, 77.

[8] AR 16.

[9] AR 12, 16.

[10] AR 1–3.

[11] Mot. – ECF No. 19.

[12] Cross-Mot. – ECF No. 20.

[13] Consents – ECF Nos. 9, 11.

**2. Summary of Administrative Record**

    **2.1   Medical Records**

The plaintiff originally alleged that he was disabled as a result of rheumatoid arthritis.[14] The ALJ also considered fibromyalgia and carpal-tunnel syndrome in his decision.[15] The plaintiff submitted the following medical records: (1) records from Kaiser Permanente from December 18, 2014 through February 3, 2017;[16] (2) a disability work status report from Jan Jingyang Lin, M.D. signed August 8, 2017;[17] and (3) progress notes and lab results from Kaiser Permanente from February 24, 2017 through November 13, 2017.[18]

Because the plaintiff's appeal challenges the ALJ's assessment of treating physician Dr. Lin's opinion from August 24, 2015, and the electromyogram, nerve conductive study (EMG/NCS) ordered by Dr. Lin on September 11, 2017, this order recounts those medical records fully.

    **2.1.1   Dr. Lin**

On August 24, 2015, Dr. Lin examined the plaintiff for rheumatoid arthritis. Dr. Lin noted that the plaintiff was an active hunter and boxer until a year ago and was still going to the gym. He had a history of lower-back pains, and swelling and pain in ankles, knees, wrists and hands.[19] Dr. Lin took a sample of the plaintiff's knee fluid that showed signs of inflammation but no crystals, and an anti-nuclear antibody ("ANA") test was positive.[20] The plaintiff had taken two courses of prednisone for the symptoms that worked temporarily.[21] He continued to experience synovitis and swelling in his hands, feet, and knees.[22] Dr. Lin opined that the plaintiff had rheumatoid arthritis.[23]

---

[14] AR 173.

[15] *See* AR 18.

[16] AR 243–357, 226–242, 358–622, 623–636, 637–653

[17] AR 654–656.

[18] AR 657–1239.

[19] AR 366.

[20] *Id.* Anti-nuclear antibodies (ANA) are seen in a variety of systemic rheumatic diseases. *See* AR 679.

[21] AR 366.

[22] *Id.*

[23] AR 369.

1   The plaintiff continued to see Dr. Lin from August 2015 until September 2017, mostly for pain

2  management.[24] Dr. Lin referred the plaintiff to John Neely, M.D. for an electromyogram and nerve

3  conductive study (EMG/NCS) on his hands, which were performed on September 11, 2017.[25] On

4  September 12, 2017, Dr. Neely opined that the study showed carpal-tunnel syndrome.[26]

### 2.2   Non-Medical Evidence

The plaintiff's wife completed a questionnaire on October 22, 2016 detailing her husband's limitations.[27] She is his primary care taker, and she handled all of the finances.[28] She reported that the plaintiff's condition impacted his ability to do the following things: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, seeing, memory, completing tasks, concentration, following instructions and using his hands.[29] Writing and filling out forms caused him severe pain.[30] He was unable to work because of his constant pain and swelling.[31] She explained that he was "unable to move like before" and had daily headaches, nausea, dizziness, loss of appetite and an inability to focus.[32]

The plaintiff's typical day consisted of getting up, watching the news, sitting outside, reading for five to ten minutes, eating lunch, sometimes taking naps, and trying to walk for 5-10 minutes.[33] Before his condition, he was able to work, run, swim, hunt, fish, lift weights, stay in the sunlight, drive for long periods of times, and do yard work.[34] Any yard and house work caused hand and feet swelling and pain.[35] He had a hard time sleeping because of the pain, and he often has

---

[24] *See, e.g.*, AR 395, 490, 663.
[25] AR 1149.
[26] AR 1150.
[27] AR 179.
[28] AR 182, 186.
[29] AR 184.
[30] AR 179, 186.
[31] AR 179.
[32] *Id.*
[33] AR 180.
[34] *Id.*
[35] AR 182.

ORDER – No. 19-cv-03038-LB         4

nightmares.[36] Due to his condition, the plaintiff was only able to make meals such as hot dogs, sandwiches, and cereal.[37] The plaintiff's wife said she prepared most of his meals.[38] The plaintiff also was unable to use utensils.[39] He did not go to any public places except to the high school for games once per week.[40] Occasionally, he used a wheelchair.[41] He was unable to carry more than three to five pounds without severe pain in his hands.[42]

### 3. Administrative Proceedings

#### 3.1 Disability Determination Explanation (DDE)

During the administrative process, non-examining doctors generated two disability-determination explanations ("DDE"), one related to the plaintiff's initial application and one at the reconsideration level.[43]

At the initial level, the state doctors found the following impairments to be non-severe: inflammatory arthritis, back-discogenic and degenerative disorders, osteoarthrosis and allied disorders, and affective disorders.[44] The doctors did not make a residual-functional capacity ("RFC") determination.[45] They found that the plaintiff's "condition [did] not result in significant limitations in [his] ability to perform basic work activities."[46] They concluded that the plaintiff was not disabled.[47]

---

[36] AR 180, 185.
[37] AR 180.
[38] AR 181.
[39] *Id.*
[40] AR 183.
[41] AR 185.
[42] AR 184.
[43] AR 54–72.
[44] AR 59.
[45] AR 61.
[46] AR 62.
[47] AR 61.

ORDER – No. 19-cv-03038-LB                    5

On reconsideration, the plaintiff alleged changes to his condition including his toenail is falling off and experiencing rashes throughout his body due to his medication.[48] The doctor made the same findings as the doctors at the initial level. The doctor again found the plaintiff to be not disabled.[49]

### 3.2   Administrative Hearing

The ALJ held a hearing on January 10, 2018.[50] The plaintiff and VE Harlem Stock testified.[51]

#### 3.2.1   Plaintiff's Testimony

The plaintiff testified that he lived with his wife and 16-year-old son.[52] He drove for thirty minutes at a time and had not worked since August 2015.[53] He stopped working because he had too much pain. His foreman tried to find him light-duty jobs to do but was still sending him home because of the pain. After not being able to work anymore due to the pain, he was diagnosed with rheumatoid arthritis. The rheumatoid arthritis affected his toes, feet, ankles, knees, hips, shoulders, elbows, wrists, and hands. The pain was the worst in his hands and feet.[54] He estimated having two to three flare-ups with his rheumatoid arthritis per month, which typically affected his entire body. When not experiencing a flare-up, he rated his pain as a seven or an eight on a ten-point scale. During a flare up, he rated the pain as an eleven.[55]

He tried different treatments for his rheumatoid arthritis such as prednisone, methotrexate, Enbrel and a Simponi infusion.[56] The treatments did not help with the pain.[57] They caused fatigue, loss of hair, bone tenderness, and loss of strength, so the plaintiff stopped the treatments.[58]

---

[48] AR 65.
[49] AR 68–71.
[50] AR 30.
[51] AR 31.
[52] AR 33.
[53] *Id.*
[54] AR 34
[55] AR 35.
[56] *Id.*
[57] AR 36.
[58] AR 35–36.

ORDER – No. 19-cv-03038-LB            6

The plaintiff testified that he could stand for only ten minutes at a time before he needed to sit down.[59] During the day, he needed to change positions consistently (from sitting, to standing, to laying down).[60] Walking was worse than standing because it aggravated the bones in his toes, ankles, knees, and hips.[61] He used a cane to help with balance and to take some of the pressure off of his knees, depending on which one was hurting.[62] He could life only a maximum of 10 pounds without pain in his elbows, lower back, and knees, and pain and shakiness in his ankles.[63] The pain caused him to be irritable, affecting his interpersonal relationships with his family and friends.[64] He tried to help out with household chores once per week, but it took him a couple hours to sweep and mop, and an hour to do the dishes because he constantly needed a break every ten to fifteen minutes due to pain in his hands, back, and legs.[65] He tried to exercise, at the recommendation of his physical therapist, by doing squats.[66] The exercise hurt his knees and ligaments, also causing his legs to tremble and his back to tighten up.[67] He used to need special help with personal care, such as showering, but he believed that the exercises enabled him to gain enough strength to where he can do those things on his own despite the persistent pain.[68] He did not enjoy going anywhere, including to the grocery store.[69] At the grocery store, the walking, pushing the shopping cart, and loading and unloading the groceries all hurt, causing him to need to stop within ten to

---

[59] AR 36–37.
[60] AR 39.
[61] AR 37–38.
[62] AR 37.
[63] AR 38.
[64] AR 39.
[65] AR 40–41.
[66] AR 41–42.
[67] AR 41.
[68] AR 42–43.
[69] AR 42.

ORDER – No. 19-cv-03038-LB         7

fifteen minutes.[70] He had to stop doing hobbies and activities such as running, jumping rope, hunting, fishing, hiking, working, playing with his kids, and playing with his grandkids.[71]

To help alleviate his condition, he elevated his legs four to five times per day, for 15 to 20 minutes.[72] This would cause his feet, ankles and knees to become swollen again, and he would have to put them down in order to get circulation started again.[73] Once per week, he would also ice his feet, hands, and knees.[74]

### 3.2.2 VE's Testimony

VE Linville also testified at the hearing.[75] He characterized the plaintiff's prior job as an electrician.[76] The ALJ asked whether the plaintiff had skills transferable to nonsupervisory light work, to which the VE responded there were sixteen occupational titles at the light level including cable splicer and electrical technician.[77] The VE explained that if a person could not do the electrician job because of occasional fingering and handling, then such a person would be unable to do the light work.[78]

The ALJ posed the first hypothetical: "[A]n individual who's less than 50 years of age, with a high school diploma, and prior work similar to the claimant who has the residual functional capacity for . . . unskilled, light work . . . [with] occasional handling and fingering."[79] The following jobs were available: (1) usher; (2) counter clerk; and (3) tanning salon attendant.[80]

---

[70] *Id.*

[71] AR 43.

[72] AR 39–40.

[73] AR 40.

[74] *Id.*

[75] AR 45.

[76] AR 45–46.

[77] AR 46–47.

[78] AR 48.

[79] AR 49.

[80] *Id.*

ORDER – No. 19-cv-03038-LB            8

The ALJ posed a second hypothetical of "sedentary, unskilled [work] with occasional fingering and handling."[81] The VE responded that no jobs would be available because unskilled and sedentary work required more than occasional hand use.[82]

The plaintiff's attorney also questioned the VE. He made three alterations to the ALJ's first hypothetical. First, he added that the person could stand and walk for only 15 minutes at a time and no more than four hours in an eight-hour day.[83] The VE testified that no jobs would be available.[84] Second, the plaintiff's attorney added that the person would need three additional breaks outside of the customary breaks for about twenty minutes each.[85] The VE explained that, as a practical matter, there would not be jobs available.[86] Third, the plaintiff's attorney added that the person was off task for 20 percent of an eight-hour day because of pain.[87] The VE said that no jobs would be available.[88]

### 3.3   Administrative Findings

The ALJ followed the five-step process to determine whether the plaintiff was disabled and concluded that he became disabled on September 12, 2017 but was not disabled prior to that date.[89]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 24, 2015.[90]

At step two, the ALJ found that the plaintiff had the following severe impairments since August 24, 2015: fibromyalgia and carpal-tunnel syndrome.[91]

---

[81] *Id.*
[82] AR 50.
[83] *Id.*
[84] *Id.*
[85] AR 51.
[86] AR 50–51.
[87] *Id.*
[88] AR 51.
[89] AR 16.
[90] AR 18.
[91] *Id.*

ORDER – No. 19-cv-03038-LB                                    9

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[92]

Before reaching step four, the ALJ determined the plaintiff's RFC. Prior to September 12, 2017, the claimant had the following RFC:

> [The plaintiff could] perform light work . . . lift and/or carry ten pounds frequently, twenty pounds occasionally . . . stand and/or walk for six hours out of an eight-hour workday . . . sit for six hours out of an eight-hour workday . . . handle and finger occasionally; and he is limited to unskilled work[93]

Beginning on September 12, 2017, the plaintiff had the following RFC

> [The plaintiff could] perform sedentary work . . . lift and/or carry ten pounds occasionally, less than ten pounds frequently . . . stand and/or walk for six hours out of an eight-hour workday . . . sit for six hours out of an eight-hour workday . . . occasionally handle and finger; and he is limited to unskilled work[94]

At step four, the ALJ concluded that since August 24, 2015, the claimant had been unable to perform any past relevant work.[95]

At step five, the ALJ found that prior to September 12, 2017, the following jobs were available to the plaintiff: (1) usher; (2) counter clerk; and (3) tanning salon attendant.[96] Beginning on September 12, 2017, there were no jobs that exists in significant numbers in the national economy that the plaintiff could perform.[97]

The ALJ concluded that the plaintiff "was not disabled prior to September 12, 2017, but became disabled on that date and has continued to be disabled through the date of this decision."[98]

---

[92] AR 18–19.
[93] AR 19.
[94] AR 23.
[95] *Id.*
[96] AR 24.
[97] AR 25.
[98] *Id.*

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working

in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) improperly determining the onset date, (2) rejecting the plaintiff's testimony, (3) rejecting the plaintiff's wife's statement, and (4) failing to base step-five on substantial evidence. The court grants the plaintiff's motion for summary judgment and denies the Commissioner's cross-motion.

### 1. Whether the ALJ Improperly Determined the Onset Date

The plaintiff argues that the ALJ erred by finding that he became disabled only after September 12, 2017 because the determination contradicts the ALJ's step-two finding and is unsupported by the evidence.[99] The court remands on this ground.

For Social Security purposes, "the critical date is the date of onset of disability, not the date of diagnosis." *Swanson v. Sec. of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985). "An ALJ's determination of a plaintiff's disability onset date must be supported by substantial evidence." *Whaley v. Colvin*, No. CV 12-04888 SS, 2013 WL 1855840, at *10 (C.D. Cal. April 30, 2013) (citing *Swanson*, 763 F.2d at 1064); *accord Pierce v. Barnhard*, C 00-0742-BZ, 2003 WL 22080729, at *1 (N.D. Cal. Aug. 15, 2003). Substantial evidence means "more than mere scintilla" such that "a reasonable mind might accept as adequate to support a conclusion." *Swanson*, 763 F.2d at 1064. "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence . . . , [which] are evaluated together to arrive at the onset date." SSR 83-20 (Jan. 1, 1983).[100] "[W]here a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Armstrong v. Comm'r of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998); *accord Harrison v. Astrue*, C 10-03711-WHA, 2011 WL 2039069, at *3 (N.D. Cal. May 25, 2011).

The ALJ's onset-date determination was not supported by substantial evidence. In finding that the plaintiff became disabled on September 12, 2017, the ALJ apparently relied on an EMG/NCS that identified the plaintiff's carpal-tunnel syndrome on this date.[101] This is insufficient for two reasons. First, the ALJ's finding is internally inconsistent to his earlier determination that the plaintiff's carpal-tunnel syndrome and fibromyalgia were "severe impairments" since "the alleged onset date of disability[] [on] August 24, 2015."[102] The Commissioner concedes that the opinion is

---

[99] Mot. – ECF 19 at 11.

[100] This regulation was subsequently replaced by SSR 18-01P, 2018 WL 4945639 (Oct. 2, 2018). SSR 18-01P applies only to claims made after October 2, 2018. The plaintiff's application predates this.

[101] AR 23.

[102] AR 18.

1  unclear and asks the court to read the ALJ's opinion to mean that the plaintiff's carpal-tunnel

2  syndrome "only rose to this [severe] level as of September 2017."[103] The court rejects the

3  Commissioner's contention. *Cf. Dixon v. Saul*, 411 F. Supp. 3d 837, 851 (N.D. Cal. 2019) ("[t]he

4  Court is limited to the agency's reasoning and cannot affirm the decision of an agency on a ground

5  that the agency did not invoke in making its decision") (cleaned up).

6  Second, to the extent the ALJ relied on the identification of carpal-tunnel syndrome to mark

7  the September 12, 2017 onset date, the record shows earlier evidence of carpal-tunnel syndrome

8  that the ALJ did not discuss. For example, on March 10, 2015, Keith Elliott Follmar, M.D.,

9  conducted a physical examination and made "clinical findings which [were] consistent with right

10  carpal tunnel syndrome."[104] The following day, Dr. Lin informed the plaintiff that he had a

11  primary encounter diagnosis of bilateral carpal-tunnel syndrome.[105] It is thus unclear why the

12  September 2017 EMG/NCS result is controlling.

13  In sum, because the ALJ's onset-date determination was inconsistent with the rest of the

14  opinion and with the medical evidence, the court remands on this basis. To the extent the onset

15  date is ambiguous, the ALJ, on remand, should consult a medical expert. *Cf. Lauser v. Colvin*, No.

16  13-cv-05990-MEJ, 2014 WL 4246159, at *8 (N.D. Cal. Aug. 27, 2014) (because the plaintiff's

17  conditions, including fibromyalgia and carpal-tunnel syndrome, "did not arise overnight," the

18  onset date of impairment "is ambiguous[] [and] the ALJ was required to call a medical expert

19  before inferring the date").

21  **2. Whether the ALJ Improperly Rejected the Plaintiff's Testimony**

22  The plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons to

23  reject the plaintiff's testimony.[106] The court remands on this ground.

---

26  [103] Cross-Mot. – ECF No. 20 at 4–5.

27  [104] AR 287.

    [105] AR 285.

28  [106] Mot. – ECF No. 19 at 13.

ORDER – No. 19-cv-03038-LB          14

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

"At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-00674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

The ALJ held that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[107] Thus, the ALJ must articulate specific, clear and convincing reasons for rejecting the plaintiff's testimony regarding the severity of the symptoms. Although the ALJ properly discounted the plaintiff's testimony based on his activities of daily living, he erred in discounting the testimony based on purported conservative treatments.

Preliminarily, the ALJ properly rejected the plaintiff's pain-related testimony based on his activities of daily living. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to

---

[107] AR 20.

United States District Court
Northern District of California

a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citation omitted). The Ninth Circuit has held that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ listed specific, clear and convincing findings to discredit the plaintiff's testimony based on his activities of daily living. The ALJ found that the listed activities (namely, babysitting, going to the gym, physical therapy exercises, hunting, boxing, swimming, and jumping rope), did not support the plaintiff's testimony regarding the pain levels in his toes, knees, wrists, hips, and hands, his consistent flare-ups, and his ability to concentrate or interact socially with others.[108] *Cf. Daniels v. Berryhill*, No. 18-cv-07326-LB, 2020 WL 1332094, at *9–10 (N.D. Cal. Mar. 23, 2020) (the ALJ provided specific and legitimate reasons for discounting a medical opinion when listing activities such as sweeping, gardening, and shopping as being inconsistent with the presence of a disabling condition).

Nevertheless, the ALJ's remaining reasonings are insufficient.

The ALJ discounted the plaintiff's testimony because he "received routine, conservative and non-emergency treatment since the alleged onset date."[109] A positive responsive to conservative and routine treatment can undermine subjective allegations of disabling pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–1040 (9th Cir. 2008). Here, however, the ALJ's conclusion, without record cites, is insufficient. First, the ALJ never defined what "conservative treatment" means. Second, the ALJ does not cite to records showing that the plaintiff should have pursued more aggressive treatment options. *Cf. Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("[a] claimant cannot be discredited for failing to pursue non-conservative treatment options" where "the record does not reflect that more aggressive treatment options are appropriate or available"). Lastly, the record shows that the plaintiff did not respond well to the treatment or medication.[110] *Ruben A. v. Saul*, No. 19-cv-03893-EMC, 2020 WL 1897578, at *8 (N.D. Cal. Apr.

---

[108] *Id.*

[109] *Id.*

[110] *See, e.g.,* AR 35–36, 663–64, 928, 956–957, 1098–99.

1   16, 2020) (because the record showed that past treatments were no longer effective, the ALJ erred

2   in finding that the treatment alleviated the plaintiff's pain).

3   In sum, because the ALJ erroneously discounted the plaintiff's testimony based on purported

4   conservative treatment and because the court remands on other grounds, the court remands on this

5   ground too.

### 3. Whether the ALJ Improperly Rejected the Lay Witness Testimony

The plaintiff argues the ALJ erred in discrediting the plaintiff's wife's statement.[111] The court remains on this ground.

The ALJ must consider "other source" testimony and evidence from a layperson. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.") (internal citation omitted). "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). It is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Moreover, if an ALJ decides to disregard the testimony of a lay witness, the ALJ must provide specific reasons that are "germane to that witness." *Parra*, 481 F.3d at 750 (internal citations omitted). The Ninth Circuit has not "required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. An ALJ may "point to" reasons already stated with respect to the testimony of one witness to reject similar testimony by a second witness. *Id.*

Here, the ALJ rejected the plaintiff's wife's statement in part because (1) the plaintiff's wife is not a medical professional, (2) the plaintiff's wife is biased because she has a financial interest in the plaintiff receiving benefits, and (3) the objective medical evidence does not fully support her statements.[112] These are not specific and germane reasons.

---

[111] Mot. – ECF 19 at 15–17.

[112] AR 20.

First, that the plaintiff's wife is not an acceptable medical source is not a germane reason to disregard her statements. *Senorina G. v. Berryhill*, No. 5:18-cv-00534-JDE, 2019 WL 688206, at *8 (C.D. Cal. Feb. 19, 2019) (holding that the ALJ's rejection of a layperson's testimony simply because it is not from a medical professional is an "improper, non-germane" reason).

Second, the ALJ cannot presume bias solely because the plaintiff's wife is a family member. *See, e.g.*, *Valentine v. Comm'r Social Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009) (claims of bias need to be supported by evidence that the plaintiff's spouse "exaggerated the claimant's symptoms in order to get access to [the] disability benefits;" broad references to familial relationships or "interested parties" in the abstract do not suffice to make a finding of bias); *Johnson v. Astrue*, No. EDCV 07–01694–MLG, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("[T]he Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship."). Here, the ALJ discredited the plaintiff's wife solely because she "supports the [plaintiff] and, therefore, she has a financial interest in seeing the claimant receive benefits."[113] This conclusory statement, without specific evidence from the record, was error.

Lastly, the ALJ mischaracterized the wife's statement. The ALJ gave weight to the plaintiff's wife's "statements detail[ing] the [plaintiff's] actual activities rather than her assessment of those abilities."[114] These activities were "prepar[ing] meals, do[ing] laundry, driv[ing], shop[ping], watch[ing] television, go[ing] to the high school games weekly, [having] no problem getting along with family, friends, neighbors or others, and . . . follow[ing] instructions pretty well."[115] As the plaintiff contends, these characterizations were inaccurate or taken out of context. For example, although the plaintiff can prepare some meals, the record shows that the only meals he prepares are hot dogs, sandwiches, and cereal because he cannot cook or use utensils.[116] The ALJ's crediting of some of the wife's statements without context improperly mischaracterizes the record.

---

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] AR 180–81.

In sum, the ALJ failed to provide specific and germane reasons to discredit the plaintiff's wife and thus erred.

### 4. Whether the ALJ's Finding at Step Five is Not Supported by Substantial Evidence

The plaintiff argues that the ALJ erred at step five.[117] Because the court finds that the ALJ erred in considering the testimonies of the plaintiff and his wife, and those affect the step-five analysis, the court remands for reconsideration of this step.

### 5. Remand for Further Proceedings

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

In deciding whether to remand a social-security case for further proceedings or for an immediate award of benefits, the Ninth Circuit has promulgated the "credit-as-true" rule. *See Garrison*, 759 F.3d at 1019–23; *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100–02 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Connett*, 340 F.3d 871, 876 (9th Cir. 2003); *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989). The credit-as-true rule applies to both "medical opinion evidence" and to "claimant testimony." *Garrison*, 759 F.3d at 1020. Under the credit-as-true rule, a reviewing court may credit evidence that was rejected during the administrative process and remand for an immediate award of benefits in the following circumstances: (1) the ALJ failed to provide "legally sufficient reasons" for rejecting the evidence; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citing *Ryan*, 528 F.3d at

---

[117] Mot. – ECF 19 at 17.

1202; *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 595; *Smolen*, 80 F.3d at 1292). If these three conditions are met, the court may remand for an award of benefits unless "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021; *see also McCartey*, 298 F.3d at 1076 (noting court's "discretion").

Generally, "'[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (alteration in original); *Treichler*, 775 F.3d at 1099, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony;" if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *McCartey*, 298 F.3d at 1076 (remand for award of benefits is discretionary); *McAllister*, 888 F.2d at 603 (remand for award of benefits is discretionary); *Connett*, 340 F.3d at 876 (finding that a reviewing court has "some flexibility" in deciding whether to remand).

Here, the court finds that remand is appropriate so as to "remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (cleaned up).

## CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: September 10, 2020

_____
LAUREL BEELER
United States Magistrate Judge